UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDREW FLORENCIO LIMONES,

Petitioner,

v.

JERRY BROWN, et al.,

Respondents.

No. 2:07-CV-0443-FVS

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS MATTER** comes before the Court on Petitioner's Amended Petition For Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Ct. Rec. 6). Petitioner is proceeding pro se. Respondent is represented by Melissa Lipon, a Deputy Attorney General for the State of California.

**BACKGROUND**

At the time his petition was filed, Petitioner was in custody at Mule Creek State Prison pursuant to his August 20, 2004, conviction in the Superior Court of the State of California, County of Sacramento, for voluntary manslaughter. The court sentenced Petitioner to an 11-year prison term. Petitioner challenges his sentence.

**I. Factual History**

The California Court of Appeal, Third Appellate District, described the facts of this case as follows:

> Ian bought drugs from defendant Limones and paid him with two $50 bills. When Limones discovered that the bills were counterfeit, he called Ian about the matter and asked him to come over to the house.

> Ian complied, and he met with defendants in one of the bedrooms. Rene, who lived at the house, was also in the room. At some point, defendant Ruiz pulled out a gun and fired at least eight times, killing both Ian and Rene. Ian was also stabbed multiple times. Defendant Limones fled the house.
>
> Defendant Ruiz later told another house resident, his then-girlfriend Melissa E., that he killed Ian because of "the counterfeit money" and that "someone had to do it." He said he killed Rene because she had allowed members from a rival gang into the house.
>
> Defendant Ruiz called a friend, Rudy K., who came to the house and, with others, loaded the bodies into the trunk of a car, drove the car to an apartment complex, and left it there. The car was subsequently set on fire with the help of another individual, Edgar S.
>
> At trial, numerous witnesses testified about the events that had transpired. Two of these witnesses, Melissa E. and Edgar S., had been prosecuted as accessories after the fact and testified pursuant to their plea bargains. A third witness, Rudy K., had previously been convicted of being an accessory after the fact and testified under a grant of use immunity.
>
> Defendants sought to discredit these witnesses, and also suggested that another person was the true perpetrator of the murders. Defendant Limones argued that he was simply in the wrong place at the wrong time and that he had nothing to do with the murders.

*People v. Limones*, 2006 WL 933646, *1-2 (Cal. App. 3 Dist. 2006).

**II. Procedural History**

Petitioner was convicted following a jury trial of voluntary manslaughter (Cal. Health and Safety Code § 192(a)). On August 20, 2004, the trial court sentenced Petitioner to the upper term of 11 years in state prison.

Petitioner appealed from his conviction and sentence to the California Court of Appeal, Third Appellate District. On April 12, 2006, the California Court of Appeal affirmed Petitioner's judgment and sentence. *Limones*, 2006 WL 933646, *1.

///

Petitioner thereafter sought review by the California Supreme Court. The California Supreme Court denied Petitioner's request for review, without prejudice, on July 12, 2006.

On March 6, 2007, Petitioner filed a petition for writ of habeas corpus asking for federal review. (Ct. Rec. 1). Petitioner filed an amended petition on March 30, 2007. (Ct. Rec. 6). Respondent's answer was filed on July 24, 2007. (Ct. Rec. 15). Petitioner did not file a traverse.

Petitioner's amended petition (Ct. Rec. 6) is now before the Court.

**DISCUSSION**

## I. Issues Presented

Petitioner presents the following grounds for relief:

> 1. The trial court violated Petitioner's rights to due process and a trial by jury when it sentenced him to an upper term of imprisonment based on his criminal history.
>
> 2. The trial court denied Petitioner's rights to confront and cross examine witnesses against him.

(Ct. Rec. 6).

## II. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

"Clearly established federal law" consists of "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Anderson v. Terhune*, 516 F.3d 781, 798 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A decision is "contrary to" clearly established federal law in two circumstances. First, a state court decision is contrary to clearly established federal law when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405, 120 S.Ct. at 1519, 146 L.Ed.2d at 425. Second, a state court decision is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 412-413, 120 S.Ct. at 1523, 146 L.Ed.2d at 430. A state court unreasonably applies clearly established federal law when it applies the law in a manner that is "objectively unreasonable." *Id.* at 409. "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 71.

Furthermore, habeas relief is warranted only if a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citing *Kotteakos v.*

*United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *Bains v. Cambra*, 204 F.3d 964, 977-978 (9th Cir.) *cert. denied*, 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000). Petitioner is entitled to habeas relief only if he can show that any constitutional violation "resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 619.

In examining whether state courts reached a decision that was contrary to federal law or whether the state courts unreasonably applied such law, the Court should look to the last reasoned state court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) *cert*. dismissed, 538 U.S. 919, 123 S.Ct. 1571, 155 L.Ed.2d 308 (2003). Where no reasoning is given in either the state court of appeals or the state supreme court, Ninth Circuit Courts must determine whether a state court's decision was objectively unreasonable based on an independent review of the record. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2000). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Id.*

Here, the last reasoned decision from a California state court is the decision of the California Court of Appeal. *Limones*, 2006 WL 933646, *1. Therefore, this Court shall examine the appellate court's decision to determine whether there existed a contrary or unreasonable application of federal law at the state level with regard to Petitioner's claims.

**III. Constitutionality Of "Upper-Term" Sentence**

Petitioner first asserts that the trial court violated his due process rights and right to a jury trial under the Sixth Amendment when it imposed an "upper-term" sentence based on Petitioner's criminal history. (Ct. Rec. 6). Petitioner contends that, in light of *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007), his "upper-term" sentence of 11 years is unconstitutional.

At the time that Petitioner was sentenced, Cal. Penal Code § 1170(b), part of California's "Determinate Sentencing Law" or "DSL," stated that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." The California Rules of Court, Cal. R. Ct. 4.420(b), indicated that "circumstances in aggravation and mitigation must be established by a preponderance of the evidence," and "[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation."

A non-exhaustive list of aggravating factors found in the California Rules of Court, and relied upon by a sentencing judge, include: 1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; 2) the defendant has engaged in violent conduct that indicates a serious danger to society; 3) the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing

seriousness; 4) the defendant has served a prior prison term; and 5) the defendant was on probation or parole when the crime was committed. Cal. R. Ct. 4.421.

In Petitioner's case, the sentencing judge selected the upper term sentence, finding that Petitioner's prior convictions outweighed his youth. The trial court specifically held that while other aggravating factors had been demonstrated at trial, pursuant to *Blakely*, it would only consider Petitioner's criminal history for purposes of sentencing. The California Court of Appeal denied Petitioner's *Blakely* error claim finding that the California Supreme Court rejected the identical claim in *People v. Black* ("*Black I*"), 35 Cal. 4th 1238, 29 Cal. Rptr. 3d 740, 113 P.3d 534 (2005). *Limones*, 2006 WL 933646, *7.

In *Black I*, the California Supreme Court held California's DSL and the upper term sentencing procedure was not invalidated by the U.S. Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 304-305, 124 S.Ct. 2531 (2004). However, the U.S. Supreme Court vacated *Black* in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007), and held that by placing sentence-elevating factfinding within the judge's province, California's DSL violated a defendant's Sixth and Fourteenth Amendment rights to trial by jury. The Court found that in all material respects, California's DSL resembled the sentencing systems invalidated in *Blakely* and *Booker*.

In *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008), the Ninth Circuit found that *Cunningham* did not announce a new rule of constitutional law within the meaning of *Teague v. Lane*, 489 U.S. 288,

109 S.Ct. 1060 (1989), and therefore, could be applied retroactively on collateral review. In the case at bar, Petitioner's conviction did not become final until after July 12, 2006, when the California Supreme Court denied his petition for review.[1] At that time, *Blakely* (2004) and *United States v. Booker*, 543 U.S. 220 (2005), as well as *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), represented clearly established law that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of a defendant. *Butler*, 528 F.3d at 639. Consequently, with regard to Petitioner, *Cunningham* did not announce a new rule of constitutional law and may be applied retroactively to him on collateral review.

Nonetheless, the Court finds that Petitioner's upper-term sentence does not violate the Sixth Amendment.[2] Prior convictions are excepted from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. *Apprendi*, 530 U.S. at 490. Under California law, only one aggravating factor is necessary to set the upper term as the maximum sentence. *Butler*, 528 F.3d at 641; *People v. Black* ("*Black II*"), 41

---

[1]Petitioner's conviction became final on September 12, 2006, 90 days after expiration of the period to file a petition for writ of certiorari with the United States Supreme Court. *United States v. Garcia*, 210 F.3d 1058, 1059-1060 (9th Cir. 2000).

[2]Even if Petitioner has not properly exhausted this constitutional challenge to his sentence as alleged by Respondent (Ct. Rec. 15), the Court chooses to deny the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

Cal. 4th 799, 815, 62 Cal.Rptr. 3d 569, 161 P.3d 1130 (2007). In *Black II*, the California Supreme Court concluded that the defendant's sentence was not unconstitutional because reliance on a prior conviction was appropriate per the United States Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998), holding that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt.

Here, one of the reasons given by the trial court for imposing the upper term is Petitioner's prior criminal convictions. The trial court noted that, in addition to other aggravating factors, Petitioner has numerous and increasingly serious prior adjudications and convictions and was on parole when the offense was committed.[3] (Ct. Rec. 15 at 15 citing RT 1696-1699). The fact of one of Petitioner's prior convictions was sufficient, by itself, to subject Petitioner to the upper-term sentence. *See Butler*, 528 F.3d at 641; *Black II*, 41 Cal. 4th at 815.

The trial court was free to exercise discretion in sentencing Petitioner as it did and therefore, Petitioner's sentence is not unconstitutional. The upper-term sentence was not contrary to, and did not involve an unreasonable application of, clearly established law as determined by the Supreme Court of the United States. No habeas relief is warranted on claim one of Petitioner's petition.

---

[3]Petitioner has not contested the finding that he had prior convictions. That Petitioner was on probation at the time he committed a crime does not, however, come within the *Almendarez-Torres* exception. *Butler*, 528 F.3d at 641.

**IV. Violation of Confrontation Clause**

Petitioner next claims that his right to confrontation was violated when a statement of Brandon Ruiz, a non-testifying co-defendant, was introduced through another witness' testimony at Petitioner's trial and incriminated Petitioner. (Ct. Rec. 6).

At trial, the prosecution theorized that Duate was killed because he gave Petitioner counterfeit money in a drug deal. Duate was murdered at the home of Melissa Evangelista. Ms. Evangelista testified that Ruiz had told her that he had killed Duate because of the counterfeit money. Ruiz did not testify at trial. Petitioner asserts that he, therefore, had no opportunity to confront and cross-examine Ruiz about the statement in violation of his rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. This constitutional guarantee is applicable to the states via the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403-406 (1965). The Confrontation Clause bars the admission of out-of-court, testimonial statements made by a witness who is unavailable to testify at trial and has not been subject to cross-examination on the same issue by the defendant in the past. *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365-1366, 158 L.Ed.2d 177 (2004)). Where a confession of a non-testifying co-

defendant that incriminates the defendant is admitted into evidence, the Supreme Court has held that the defendant's Confrontation Clause rights are violated even if the jury is instructed to disregard the co-defendant's testimony when determining the guilt of the defendant. *Bruton v. United States*, 391 U.S. 123, 127, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

However, the holding in *Bruton* was limited by the Supreme Court in *Richardson v. Marsh*, 481 U.S. 200 (1987). In *Marsh*, the Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name but any reference to his or her existence." *Marsh*, 481 U.S. at 21. The Court indicated that the confession in *Marsh*, unlike the confession in *Bruton*, "was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony)." *Marsh*, 481 U.S. at 208; *see Mason v. Yarborough*, 447 F.3d 693, 695 (9th Cir. 2006) ("*Bruton* specifically exempts a statement, not incriminating on its face, that implicates the defendant only in connection to other admitted evidence."); *see also United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) (noting that *Marsh* "'limited *Bruton* to confessions that are facially incriminating.'").

The California Court of Appeal discussed Petitioner's confrontation clause claim as follows:

> The United States Supreme Court has held [in *Bruton*] that, because jurors cannot be expected to ignore one defendant's confession that is 'powerfully incriminating' as to a second defendant when determining the latter's guilt, admission of such

> a confession at a joint trial generally violates the confrontation rights of the nondeclarant. [Citation.] Earlier, [in *Aranda*], this court had reached a similar conclusion on nonconstitutional grounds. [Citation.]
>
> "More recently, however, [in *Richardson v. Marsh* (1987) 418 U.S. 200, 207-208 [95 L.Ed.2d 176, 185-186], the United States Supreme Court has stated that the positive authority of [*Bruton*] . . . extends only to confessions that are not only 'powerfully incriminating' but also 'facially incriminating' of the nondeclarant defendant. [Citation.] The court held that a defendant's rights under the confrontation clause are not violated by the admission in evidence of a codefendant's confession that has been redacted 'to eliminate not only the defendant's name, but any reference to his or her existence,' even though the confession may incriminate the defendant when considered in conjunction with other evidence properly admitted against the defendant." (*People v. Fletcher, supra,* 13 Cal.4th at pp. 455-456, fn. omitted.)
>
> That is precisely the situation in this case. Melissa testified that defendant Ruiz told her that he had shot Ian. When the prosecutor asked, "Did he tell you why he killed Ian?" Melissa replied, "Um, the counterfeit money." She later added that Ruiz had said "someone had to do it."
>
> Nothing in either statement facially incriminated defendant Limones. His name was not mentioned, and there was nothing in the statements that referred to his existence. This case is therefore unlike *People v. Archer* (2000) 82 Cal.App.4th 1380, cited by defendant. In that case, a redacted statement by the declarant described a murder in terms that clearly implicated another person in the crime. (*Id.* at pp. 1388-1390.) For example, the declarant said that he was walking in front of the victim when the victim was first stabbed. (*Id.* at p. 1388.) The declarant admitted stabbing the victim twice in the arm, but also said that the victim was stabbed more than 10 times in the chest or stomach. (*Ibid.*) As the *Archer* court noted, "While appellant's name is not mentioned in the statement, the existence of another participant is obvious from the statement itself." (*Id.* at p. 1390.)
>
> In contrast, nothing in defendant Ruiz's statements suggested that defendant Limones or any other person was involved in the killing. That conclusion could be drawn only by considering other, properly admitted evidence. Under these circumstances, as explained in *Fletcher* and *Richardson*, there is no *Bruton-Aranda* problem, and defendant's claim therefore fails.

*Johnson*, 2006 WL 933546 at *6-7.

///

As stated by the California Court of Appeal, Ms. Evangelista's testimony that Ruiz had told her that he had killed Duate because of the counterfeit money did not incriminate anyone else in the crime. Nothing in the statement facially incriminates Petitioner. Therefore, pursuant to *Marsh*, Petitioner's confrontation rights have not been violated. Petitioner has failed to demonstrate that the California Court of Appeal's rejection of his Confrontation Clause claim is contrary to or an unreasonable application of clearly established law as determined by the Supreme Court of the United States. Petitioner is thus not entitled to habeas relief on this claim as well.

**CONCLUSION**

The California Court of Appeal's adjudication of Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent. It also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the Court finds that Petitioner's Amended Petition for Writ of Habeas Corpus (**Ct. Rec. 6**) is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order, **enter judgment accordingly**, furnish copies to counsel and **Petitioner** and **CLOSE THE FILE**.

**DATED** this 10th day of December, 2009.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge